UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

VALENTYNA PALMER,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, VALENTYNA PALMER (hereinafter "PALMER"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. PALMER seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. PALMER is *sui juris* and is a resident and citizen of the state of Ohio.

6. CARNIVAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7. CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a.    Operated, conducted, engaged in, or carried on a business venture; and/or

    b.    Had an office or agency; and/or

    c.    Engaged in substantial activity; and/or

    d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

8. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS

9. The "subject area" refers to the floor to ceiling mirrored circular pillars around the Atrium level onboard the *Horizon*, in front of the Fun Shops.



Exemplar of floor to ceiling circular mirrored pillar

10. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Horizon*.

11. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in PALMER'S incident.

12. PALMER'S incident occurred on or about December 24, 2023, while she was a fare paying passenger on CARNIVAL'S vessel, the *Horizon*.

13. On or about December 24, 2023, at approximately 9 P.M., she was walking around the Fifth Deck Promenade (inside the ship), when all of a sudden, she walked directly into a circular floor to ceiling mirrored pillar.

14. This mirrored circular pillar, as shown above, casted reflections of the many passengers watching the show in the Atrium as well as reflections from the windows of the Fun Shops.

15. These reflections caused an optical illusion, created a dangerous condition which caused PALMER to not recognize this hazard.

16. As a result, PALMER sustained severe injuries that include, but are not limited to, a broken pelvis, spinal injuries, which required an air evacuation from the following port, and surgery.

17. At all relevant times, the risk-creating and/or dangerous condition was the subject circular mirrored pillar PALMER did not recognize as such and walked into.

18. This dangerous condition caused PALMER'S incident and injuries because it caused her to walk into it, thereby causing her to fall violently on her left side.

19. CARNIVAL either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the following:

a. CARNIVAL participated in the installation and/or design of the circular mirrored pillars, or alternatively, CARNIVAL accepted the circular mirrored pillars with its unreasonably dangerous reflective design present after having been given an opportunity to inspect the ship and materials on it, including the subject circular mirrored pillars, such that CARNIVAL should have known of the unreasonably dangerous reflective and defective design before providing it for public use.

b. CARNIVAL also knew or should have known of this dangerous condition through inspecting the subject area involved in PALMER'S incident, and if it did not know of this dangerous condition, this was because CARNIVAL failed to adequately inspect the subject area prior to PALMER'S incident.

c. CARNIVAL also knew or should have known that the reflections that come off of a circular mirrored pillar created non-linear reflections that can be dangerous and created optical illusions that can cause passengers to not appreciate the reflections when traversing a busy walkway they are not familiar with.

d. Moreover, CARNIVAL knew or should have known of this dangerous condition as it was aware of alterative designs for similar such pillars as shown throughout the vessel; as shown below:



Lido Deck pillars with minimal mirroring on *Horizon*



Lido Marketplace pillar on *Horizon*



Fun Shops pillar ending at counter height on *Horizon*



Casino pillar onboard *Horizon*

20. At all times relevant, the subject mirrored circular pillars were unreasonably dangerous, risk-creating, defective, improperly designed, and/or otherwise unsafe.

21. The subject area and the vicinity lacked adequate safety features to prevent or minimize PALMER'S incident and/or injuries.

22. The dangerous condition was known, or should have been known, to CARNIVAL in the exercise of reasonable care.

23. The dangerous condition existed for a period of time before the incident.

24. The dangerous condition was not open nor obvious to reasonable passengers, including PALMER, and CARNIVAL failed to adequately warn PALMER of the danger.

25. At all times relevant, CARNIVAL had the ability to remedy the dangerous condition, but failed to do so. For example, CARNIVAL could have covered, included warnings, or otherwise blocked off the dangerous circular mirrored pillars that were unreasonably dangerous as they created dangerous non-lineal reflections causing an optical illusion.

26. At all times relevant, CARNIVAL failed to maintain the condition in a reasonably safe condition such that it was not dangerous. For example, CARNIVAL failed to perform regular upkeep on the subject stairs, including, but not limited to, by failing to apply and to regularly apply anti-slip/slip resistant material to this stairs.

27. At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject circular mirrored pillar involved in PALMER'S incident.

28. At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject circular mirrored pillar involved in PALMER'S incident.

29. The crewmembers of the *Horizon* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

30. CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

31. CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

## COUNT I
## NEGLIGENT FAILURE TO REMEDY

32. PALMER hereby adopts and re-alleges each and every allegation in paragraphs 1-31 if set forth herein.

33. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

34. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous condition.

35. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to PALMER and were negligent by failing to adequately remedy the dangerous condition.

36. CARNIVAL either knew or should have known of these risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19.

37. Moreover, this risk-creating and/or dangerous condition was caused by CARNIVAL'S failure to adequately remedy the dangerous condition.

38. CARNIVAL'S breach was the cause in-fact of PALMER'S great bodily harm in that, but for CARNIVAL'S breach PALMER'S injuries would not have occurred.

39. Furthermore, the subject circular mirrored pillars were also on a vessel in one of the busiest parts of the vessel, that passengers might not be familiar with and can cause confusion and optical illusions.[1]

40. CARNIVAL'S breach proximately caused PALMER great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

41. As a result of CARNIVAL'S negligence, PALMER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of PALMER'S vacation, cruise, and transportation costs.

42. The losses are permanent and/or continuing in nature.

43. PALMER has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, VALENTYNA PALMER, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that PALMER will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

---

[1] As noted in Paragraph 19, other areas upon that vessel that can become bust with passengers all use alternative styles of pillars; non that create optical illusions.

## COUNT II
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

44. PALMER hereby adopts and re-alleges each and every allegation in paragraphs 1-31 as if set forth herein.

45. At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including PALMER.

46. Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to PALMER.

47. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

48. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to PALMER and was negligent by failing to warn PALMER of the dangerous condition.

49. Furthermore, CARNIVAL knew or should have known of this dangerous condition for the reasons discussed in paragraph 19.

50. This dangerous condition was also created by CARNIVAL.

51. CARNIVAL failed to adequately ensure there was no dangerous condition that passengers needed to be warned of, and/or CARNIVAL failed to warn PALMER despite knowing of the danger.

52. This dangerous condition existed for a period of time before the incident.

53. This dangerous condition was neither open nor obvious to PALMER.

54. CARNIVAL'S breach was the cause in-fact of PALMER'S great bodily harm in that, but for CARNIVAL'S breach PALMER'S injuries would not have occurred.

55. Furthermore, the subject area on Deck 5 around the circular mirrored pillars and the vicinity were full of passengers enjoying the show down below in the Atrium, creating an optical illusion of the circular full-mirrored pillar. The passengers and the reflection from the windows of the surrounding shops made this a dangerous condition CARNIVAL or should have known and warned of.

56. CARNIVAL'S breach proximately caused PALMER great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

57. As a result of CARNIVAL'S negligence, PALMER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of PALMER'S vacation, cruise, and transportation costs.

58. The losses are permanent and/or continuing in nature.

59. PALMER has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, VALENTYNA PALMER, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that PALMER will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence,

and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE CIRCULAR MIRRORED PILLARS

60. PALMER hereby adopts and re-alleges each and every allegation in paragraphs 1-31, as if set forth herein.

61. CARNIVAL negligently designed, or in the alternative, approved of the design of the subject circular mirrored pillars in the following manner: CARNIVAL designed, or in the alternative, approved of the design of the pillars PALMER walked into on despite the fact that it lacked adequate protections for passengers so as not to create potentially dangerous optical illusions.

62. CARNIVAL should have designed the subject area without the defects enumerated above, as it did so on other decks[2], where its pillars are only mirrored halfway, not mirrored at all, or merely mirrored at the bottom and top, or in the alternative, should not have approved of the subject area with these defects present. Therefore, CARNIVAL is liable for designing, or in the alternative, approving of the design of the subject area with these defects present.

63. At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to PALMER, not to permit a dangerous condition to be in a place where it could harm passengers, as well as to design and install reasonable safeguards.

64. At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which PALMER was injured into the channels of trade, and/or CARNIVAL approved of

---

[2] *See* Paragraph 19, *supra.*

the subject vessel's design, including the design of the circular mirrored pillars.

65. At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Horizon*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to PALMER, to design, install and/or approve of the full length circular mirrored pillars such that the aforementioned dangerous conditions were not present at the time of PALMER'S incident.

66. At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject full length circular mirrored pillars and the vicinity involved in PALMER'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

67. CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject floor to ceiling circular mirrored pillars and the vicnity.

68. CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Horizon*, during the new build process.

69. CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

70. CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

71. However, CARNIVAL permitted the dangerous condition to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

72. Furthermore, CARNIVAL knew or should have known of the dangerous condition for the reasons discussed in paragraph 19.

73. The design flaws that made the subject floor to ceiling circular mirrored pillars and the vicinity involved in PALMER'S incident unreasonably dangerous were the direct and proximate cause of PALMER'S injuries.

74. CARNIVAL is liable for the design flaws of the vessel, including of the subject floor to ceiling circular mirrored pillars and the vicinity involved in PALMER'S incident, which it knew or should have known of.

75. CARNIVAL failed to correct and/or remedy the defective condition, despite the fact that CARNIVAL knew or should have known of the danger.

76. CARNIVAL'S breach was the cause in-fact of PALMER'S great bodily harm in that, but for CARNIVAL'S breach PALMER'S injuries would not have occurred.

77. CARNIVAL'S breach proximately caused PALMER great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

78. As a result of CARNIVAL'S negligence, PALMER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of PALMER'S vacation, cruise, and transportation costs.

79. The losses are permanent and/or continuing in nature.

80. PALMER has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, VALENTYNA PALMER, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that PALMER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## VICARIOUS LIABILITY FOR THE NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE MIRRORED CIRCULAR PILLARS

81. PALMER hereby adopts and re-alleges each and every allegation in paragraphs 1-32 as if set forth herein.

82. This is an action against CARNIVAL for its vicarious liability for the active negligence of its employees for their negligent design, construction and selection of the subject area.

83. At all times material herein, the crew aboard the CARNIVAL *Horizon* were the employees of the Defendant. CARNIVAL is therefore vicariously liable for the active negligence of its crew for their negligent design, construction and selection of the subject area. CARNIVAL therefore owes a duty to exercise reasonable care for the safety of its passengers by and through its employees. CARNIVAL's crew have a duty of care which includes to design, construct and select materials for all areas and features of its vessels, including the subject areas, as part of their duty of reasonable care under the circumstances. CARNIVAL's crew had a duty to design the

subject area including shipboard common area stairs in a reasonably safe manner and in accordance with industry standards.

84. At all times material hereto, CARNIVAL's employees assigned to design, construct and/or select materials for CARNIVAL ships were subject to the control and/or right to control by CARNIVAL. CARNIVAL operated, controlled and/or maintained departments of employees who are designated and/or responsible for the design, construction and/or selection materials of CARNIVAL ships. Similarly, CARNIVAL operated, controlled and/or maintained departments of employees who are responsible for repairs, redesign, upgrades, updates and/or modifications of areas onboard CARNIVAL ships. CARNIVAL was responsible for among other things and without limitation overseeing the operations of its employees who design construct and/or select materials for CARNIVAL ships and/or responsible for repairs, redesign, upgrades, updates and/or modifications of areas onboard CARNIVAL ships; selecting, purchasing and maintaining designs, construction and/or selection of materials for its ships; training, evaluating, managing and coaching employees responsible for the design, construction and/or selection of materials for its ships; and establishing rules, protocols and/or procedures for employees responsible for the design, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications of CARNIVAL's ships.

85. Upon information and belief and at all times material hereto CARNIVAL employs, operates and/or otherwise controls departments which are designated and/or otherwise assigned to design, construct, select materials of ships as well as repairs, redesign, upgrades, updates and/or modifications to existing ships. Upon information and belief and at all times material hereto these departments include but may not be limited to the New Build Department and Refurbishment Departments. CARNIVAL's departments including the New Build and Refurbishment

departments plan, organize, operate and/or control the design, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications to CARNIVAL ships. These employees create, review and/or approve all designs, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications to CARNIVAL ships. To do so these employees work individually and in teams, undergo regular and continuous meetings amongst the responsible departments as well as CARNIVAL employees who work onboard and/or visit CARNIVAL's ships.

86. CARNIVAL's employees custom designed, and custom built the CARNIVAL *Horizon* to their specifications. CARNIVAL employees participated in and/or approved of the design of the subject area including the unreasonably slippery and uneven stairs. CARNIVAL's employees participated in and/or approved of the selection of the materials for the subject area including the subject stairs. CARNIVAL's employees participated in and/or approved of the installation of the materials for the subject area including the unreasonably dangerous floor to ceiling circular mirrored pillars. CARNIVAL's employees chose to install these same dangerous floor to ceiling circular mirrored pillars throughout its fleet. CARNIVAL's employees continue to repair, modify and/or install the same unreasonably dangerous floor to ceiling circular mirrored pillars on all its ships, including the CARNIVAL *Horizon*. At all times CARNIVAL's employees had the ultimate control over the design and construction of the CARNIVAL *Horizon*. CARNIVAL's employees had the right to inspect both the designs on paper and the design and construction at the yard. CARNIVAL's employees had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the CARNIVAL *Horizon* and all other CARNIVAL ships within the fleet including the same unreasonably dangerous floor to ceiling circular mirrored pillars. CARNIVAL's employees had

the right to reject any and all items, designs and construction. CARNIVAL's employees held the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. CARNIVAL's employees approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that CARNIVAL has operated and maintained the ship continuously since on or about 2018.

87. CARNIVAL's employees knew or should have known that the subject area including the unreasonably dangerous floor to ceiling circular mirrored pillars it chose and installed on the CARNIVAL *Horizon* were unreasonably dangerous creating optical illusions in a busy common area, as shown by the other designs of pillars throughout the vessel that do not contain full length mirrored pillars.

88. CARNIVAL's employees knew or should have known of the dangerousness of the dangerous floor to ceiling circular mirrored pillars since their installation in 2018.

89. CARNIVAL is vicariously liable for negligent acts of its employees. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd*., 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case CARNIVAL's employee' negligent acts caused the Plaintiff to fall. Specifically, CARNIVAL's employees were negligent by approving, designing, constructing, and/or selecting the materials for subject area including the floor to ceiling circular mirrored pillars on board the CARNIVAL *Horizon* where the subject incident occurred. CARNIVAL's employees failed to design, construct, select, approve and/or select materials that complied with industry standards. The design and/or materials CARNIVAL's employees chose, selected, approved of and/or installed for the subject area on board the CARNIVAL *Horizon* were unreasonably dangerous.

90. Nevertheless, CARNIVAL's crew either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraph 19 above and incorporated herein.

91. CARNIVAL's employees breached their duties of care owed to PALMER and were negligent by approving, designing, constructing, and/or selecting the materials for the dangerous floor to ceiling circular mirrored pillars on board the CARNIVAL *Horizon* where the subject incident occurred. CARNIVAL's employees failed to design, construct, select, approve and/or select materials that complied with industry standards. The design and/or materials CARNIVAL's employees chose, selected, approved of and/or installed for the subject area on board the CARNIVAL *Horizon* were unreasonably dangerous.

92. CARNIVAL's employees' negligent design, construction, and selection of materials for the subject area on board the CARNIVAL *Horizon* proximately caused PALMER's injuries. Had CARNIVAL's employees properly and/or reasonably designed, constructed, and selected the subject area on board the CARNIVAL *Horizon*, PALMER would have never fallen and sustained injuries as a direct result of the subject fall.

93. As a result of CARNIVAL'S negligence, PALMER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of PALMER'S vacation, cruise, and transportation costs.

94. The losses are permanent and/or continuing in nature.

95. PALMER has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, VALENTYNA PALMER, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that PALMER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, VALENTYNA PALMER, demands trial by jury on all issues so triable.

August 26, 2025
Miami, Florida

                        Respectfully Submitted,
                        **CHASE JUSTICE | INJURY ATTORNEYS**
                        150 SE 2nd Ave., Suite 1410
                        Miami, Florida 33131
                        Telephone:   (305) 677-2228
                        Facsimile:   (305) 677-3232
                        E-mail:         brandon@chasejustice.com
                                          eservice@chasejustice.com

                        By:          */s/ Brandon L. Chase*
                              Brandon L. Chase, Esq.
                              Florida Bar No. 90961